IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CORNELIUS LYNCH, | ) | CASE NO.  1:19-CV-02240-SL |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN NEIL TURNER, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Cornelius Lynch ("Lynch" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Lynch is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Lynch*, Cuyahoga County Court of Common Pleas Case No. 14-CR-585501-A. For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Lynch's conviction as follows:

1

{¶ 2} The instant appeal arose from an incident that occurred between Lynch and his girlfriend's daughter, M.H. At the time of the incident, M.H. was 12 years old, and Lynch had been living with his girlfriend, S.P., and M.H. for a few years. M.H. alleged that Lynch sexually assaulted her on May 26, 1994. M.H. reported the incident to her mother the next morning, and M.H. went to the hospital where a rape kit examination was performed. M.H. spoke with hospital staff and the police about the incident, and she indicated that Lynch was her assailant. Cuyahoga County Division of Children and Family Services ("CCDCFS") investigators also interviewed M.H. and Lynch. Approximately two weeks later, M.H. recanted her allegations against Lynch.

{¶ 3} Although M.H. recanted her allegations, her rape kit was submitted to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing in August 2012. DNA testing established that Lynch could not be excluded as the source of semen on the vaginal swab from the rape kit.

{¶ 4} After learning of the DNA match, investigators reinterviewed M.H. and S.P. M.H. informed the investigators that Lynch assaulted her in May 1994.

{¶ 5} On May 15, 2014, in Cuyahoga C.P. No. CR–14–585501–A, the Cuyahoga County Grand Jury returned a three-count indictment charging Lynch with (1) rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(b), with a furthermore specification alleging that Lynch purposely compelled the victim to submit by force or threat of force, (2) rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(b), and (3) kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4). Count 1 alleged that Lynch engaged in vaginal intercourse with M.H., and Count 2 alleged that Lynch engaged in cunnilingus with M.H. Lynch was arraigned on May 30, 2014. He pled not guilty to the indictment. Shortly after Lynch was indicted, S.P. died.

{¶ 6} Lynch's counsel filed a motion to withdraw on July 2, 2014. The trial court granted counsel's motion, and the court assigned a new attorney to represent Lynch on July 9, 2014.

{¶ 7} On October 31, 2014, Lynch's counsel filed motions for independent DNA analysis and to dismiss the indictment based on preindictment delay. Lynch's counsel filed a supplemental motion to dismiss based on preindictment delay on November 17, 2014. On February 12, 2015, the trial court denied defense counsel's motion to dismiss.

{¶ 8} On August 5, 2015, Lynch's counsel filed a motion for reconsideration of the motion to dismiss for preindictment delay. The trial court denied defense counsel's motion for reconsideration on October 2, 2015.

{¶ 9} On February 2, 2016, Lynch's counsel filed a second supplemental motion to dismiss based on preindictment delay. On February 12, 2016, the trial court denied defense counsel's motion to dismiss.

{¶ 10} A jury trial commenced on March 7, 2016. On March 10, 2016, the trial court declared a mistrial based on an issue that arose with one of the 12 jurors. On March 11, 2016, Lynch's second attorney filed a motion to withdraw as counsel. The trial court granted counsel's motion, and the court assigned a new attorney to represent Lynch on March 17, 2016.

{¶ 11} On September 9, 2016, Lynch's counsel filed a motion to reconsider the defense's previous motions to dismiss based on preindictment delay. After holding a hearing, the trial court denied the motion to reconsider on September 13, 2016.

{¶ 12} A second jury trial commenced on September 15, 2016. At the close of trial, the jury found Lynch guilty on all three counts on September 20, 2016. The trial court referred Lynch to the probation department for a presentence investigation report and set the matter for sentencing.

{¶ 13} The trial court held a sentencing hearing on October 20, 2016. The trial court merged Counts 1 and 3 for sentencing purposes. The state elected to sentence Lynch on Count 1. The trial court imposed a prison term of 15 years to life on Count 1, and a prison term of 15 years to life on Count 2. The trial court ordered the counts to run concurrently. The trial court found Lynch to be a sexually oriented offender and reviewed his reporting requirements.

*State v. Lynch*, 2018-Ohio-1078, 109 N.E.3d 628, 631-33 (Ohio Ct. App. 2018).

## II.  Procedural History

### A.  Trial Court Proceedings

On May 15, 2014, the Cuyahoga County Grand Jury indicted Lynch on the following charges:  two counts of rape in violation of O.R.C. § 2907.02(A)(1)(b) and one count of kidnapping in violation of O.R.C. § 2905.01(A)(4).  (Doc. No. 7-1, Ex. 1.)  Lynch entered pleas of not guilty to all charges.  (Doc. No. 7-1, Ex. 2.)

Before trial, Lynch, through counsel, filed a motion to dismiss the indictment for pre-indictment delay.  (Doc. No. 7-1, Ex. 3.)  The state filed a brief in opposition.  (Doc. No. 7-1, Ex. 4.)  On November 17, 2014, Lynch filed a supplemental motion to dismiss the indictment for pre-indictment delay. (Doc. No. 7-1, Ex. 5.)  On February 12, 2015, the trial court denied Lynch's motion to dismiss.  (Doc. No. 7-1, Ex. 6.)

3

On August 5, 2015, Lynch, through counsel, filed a motion for reconsideration of the motion to dismiss.  (Doc. No. 7-1, Ex. 7.)  The State filed a brief in response.  (Doc. No. 7-1, Ex. 8.)  On October 2, 2015, the trial court denied Lynch's motion for reconsideration.  (Doc. No. 7-1, Ex. 9.)

On February 2, 2016, Lynch, through counsel, filed a second supplemental motion to dismiss the indictment for pre-indictment delay.  (Doc. No. 7-1, Ex. 10.)  The State filed a brief in response.  (Doc. No. 7-1, Ex. 11.)  On February 17, 2016, the trial court denied Lynch's motion to dismiss for pre-indictment delay.  (Doc. No. 7-1, Ex. 12.)

The case proceeded to jury trial on March 7, 2016.  (Doc. No. 8 at PageID #789, 793-94.)  On March 10, 2016, the trial court declared a mistrial after removing a juror for his inability to follow the instructions given by the Court and his inability to adhere to his oath as a juror.  (*Id.* at PageID #1302.)

On September 9, 2016, Lynch, through counsel, filed a motion to reconsider Lynch's motion to dismiss.  (Doc. No. 7-1, Ex. 13.)  On September 13, 2016, the trial court denied Lynch's motion for reconsideration.  (Doc. No. 7-1, Ex. 14.)

The case proceeded to jury trial on September 14, 2016.  (Doc. No. 8 at PageID #1334.)  On September 20, 2016, the jury returned a verdict finding Lynch guilty as charged in the indictment.  (Doc. No. 7-1, Ex. 15.)

On October 20, 2016, the state trial court held a sentencing hearing.  (Doc. No. 7-1, Ex. 16.)  The trial court sentenced Lynch to an aggregate sentence of 15 years to life in prison.  (*Id.*)  Count Three merged with Count One and the State elected to sentence on Count One.  (*Id.*)  The trial court imposed concurrent sentences of 15 years to life for Count One and 15 years to life for Count Two.  (*Id.*)

## B.    Direct Appeal

Lynch, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals.  (Doc. No. 7-1, Ex. 17.)  In his appellate brief, he raised the following assignments of error:

4

I.      Mr. Lynch's rights to due process and a fair trial were violated when the trial court denied his motion to dismiss for pre-indictment delay and then denied his motion to reconsider that ruling.

II.     Prosecutorial misconduct in encouraging the jury to convict based on sympathy for M.H. violated Mr. Lynch's constitutional rights to a fair trial and due process and to be convicted based only on the evidence against him.

III.    Counsel provided constitutionally ineffective assistance when he failed to object to the prosecutor's improper argument as set forth in the Second Assignment of Error.

IV.     Because there was no manifest necessity for the trial court to grant a mistrial, the constitutional protection against being twice put in jeopardy for the same offense required that the charges against Mr. Lynch be dismissed.

 (Doc. No. 7-1, Ex. 18.)   The State filed a brief in response (Doc. No. 7-1, Ex. 19), to which Lynch

replied.  (Doc. No. 7-1, Ex. 20.)

On March 22, 2018, the state appellate court affirmed Lynch's convictions.  (Doc. No. 7-1, Ex.

22.)  *See also State v. Lynch*, 2018-Ohio-1078, 109 N.E.3d at 631.

On May 7, 2018, Lynch, through counsel, filed a Notice of Appeal with the Supreme Court of

Ohio.   (Doc. No. 23.)   In his Memorandum in Support of Jurisdiction, Lynch raised the following

Propositions of Law:

I.      A trial court violates a defendant's rights against double jeopardy by trying him a second time when, without manifest necessity, it had previously declared a mistrial over his personal and explicit objection.

II.     This Court must be presumed to mean what it says and that a defendant will be found to suffer "actual prejudice" for purposes of determining a constitutional violation due to pre-indictment delay when he can offer "an explanation" of what no longer available evidence would likely have provided and how it would "minimize or eliminate the impact of the state's evidence and bolster the defense." *State v. Jones* 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶28.

III.    A prosecutor's comments during closing argument that are designed to inflame the prejudices and passions of the jury are improper and may require reversal.

(Doc. No. 7-1, Ex. 24.)  The State did not file a response.

5

On July 5, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 7-1, Ex. 25.)

On October 2, 2018, Lynch, through counsel, filed a petition for a writ of certiorari in the United States Supreme Court.  (Doc. No. 7-1, Ex. 26.)  In his petition, Lynch identified the following question presented:

> May a state, consistent with the protections of the Double Jeopardy Clause, try a defendant a second time when the first trial ended in a mistrial which was not manifestly necessary and that was declared over the specific and personal objection of the defendant?

(*Id.*) On November 13, 2018, the United States Supreme Court denied Lynch's petition for a writ of certiorari.  (Doc. No. 7-1, Ex. 27.)

## C.  Federal Habeas Petition

On September 26, 2019,[1] Lynch filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Items and Information Admitted Into the Official Record That Are Missing or Have Been Altered
>
> > **Supporting Facts**:  This Ground One pertains to items or information which the trial court entered into the record which are missing from the official files of the Clerk of Courts.  The fact that these records are missing and were material to the adjudication of Lynch's appeal of federal . . . [SEE CONTINUATION PAGES FOR GROUND ONE, STARTING AT PAGE G-1-1]
>
> **GROUND TWO**:  Fraud on the Court
>
> > **Supporting Facts**:  Lynch's factual support for his Ground Two claim of fraud on the court is based upon the five investigative reports that Juror #7 Meo sent to

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  Lynch fails to state when he placed it in the prison mailing system, although Lynch executed the Petition on September 3, 2019.  (Doc. No. 1 at 15.)  However, in his Traverse, Lynch stated "a manual copy of the AO 241 and the 400+ pages of supplemental and supporting pages had to be filed in person by Meo on behalf of Petitioner Lynch on September 26, 2019."  (Doc. No. 9 at 7.)

the FBI in September, [sic] 2018, October 2018, February 2019, April 2019, and July 2019.

As previously stated in Ground One, Meo submitted these reports as support for his reasonable belief that . . .  [SEE CONTINUATION PAGES FOR GROUND TWO, STARTING AT PAGE G-2-1]

**GROUND THREE:**  Trial Court failed to engage in the required scrupulous search for alternatives to a mistrial.

> **Supporting Facts:**  In Ground Three, Lynch asserts that the trial court failed to engage in the required scrupulous search for alternatives to a mistrial before declaring the mistrial sua sponte [H-19].  Specifically,  . . .  [SEE CONTINUATION PAGES FOR GROUND THREE, STARTING AT PAGE G-3-1]

**GROUND FOUR:**  Lynch asserts that he suffered actual prejudice due to preindictment delay.

> **Supporting Facts:**  In Ground Four, Lynch asserts that he suffered actual prejudice due to preindictment delay which violated his constitutional rights under the 14th Amendment, two U.S. Supreme Court cases, and multiple Ohio Supreme Court cases that interpret and enforce this federal constitutional protection . . .  [SEE CONTINUATION PAGES FOR GROUND FOUR, STARTING AT PAGE G-4-1]

**GROUND FIVE:**  The Double Jeopardy Claim Ground is an "umbrella" constitutional claim relating to the first trial of Lynch in March 2016.

> **Supporting Facts:**  The Double Jeopardy Claim Ground is an "umbrella" constitutional claim relating to the first trial of Lynch in March 2016.  It covers multiple underlying constitutional violation sub-claims which prejudiced Lynch, including:

> A. Interference by the trial judge with the jury as the sole and exclusive decider of the facts, culminating in the improper removal of Meo Juror #7 … [SEE CONTINUATION SECTION BELOW, AFTER ANSWERS TO FORM QUESTIONS OF ITEM 12.]

> * * *

> B. The trial judge targeted a specific juror, known in voir dire to be a CPA, former auditor, and detail oriented person [*H-96*]. That juror, Meo Juror #7, was closely observed and allowed to take extensive notes during the entirety

7

of the trial testimony of two key witnesses-the DNA expert and the accuser M.H. Then suddenly, after the lunch break at the apparent motion of the prosecution, 79 pages into the transcript testimony, the trial judge announced to the jury that note-taking was to be stopped.

C. The trial judge created false narratives on the record in an attempt to cover-up the fact that the trial judge closely observed the juror taking notes from around 9:15AM to 11:55PM but said nothing.  In his verbal instruction to stop note-taking, the trial judge pretended that the trial had just started and that he didn't notice Meo Juror #7 taking copious notes for over 2-1/2 hours.

D. In the hearing a few days later, the trial judge falsely accused Meo of violating a verbal instruction "that notes were not to be used as part of the deliberations, either." [*H-215 to H-216; H-144 to H-145*].  Meo flatly told the judge that specific instruction had not been made.  Furthermore, previous verbal instructions, which a reasonable juror would presume to be comprehensive since the written jury instructions were taken into jury deliberations for reference as needed.

E. In the hearing, the trial judge created more false narratives to give the impression that Meo Juror #7 had a cognitive mental impairment which prevented him from serving on the jury [*H-272*].

F. The trial judge failed to allow discussion with counsels for a scrupulous search for alternates to a mistrial declaration. [This is addressed as a separate Ground.]

G. Some jurors conspired to oust Meo from the jury. The hearing transcript [*H-206 to H-263*] clearly showed that they coordinated the statements that they made in the hearing to maximize the inflammatory impact on the trial judge. Based on the judge's previous statements to stop Meo taking notes, the later dramatic confiscation of Meo's notes by the bailiff in full view of all jurors during deliberations, the prohibition on all readbacks of testimony in the written jury instructions, and the questionable appearance of the medical exhibits absent any written guidance on those in the written jury instructions, some jurors perceived that the trial judge would be receptive to any complaints they made against Meo to [sic] order to remove him from the jury as the apparent holdout juror.  Three or four jurors created "notes" on what Meo said during deliberations, likely including comments Meo made in deliberations about possible judicial misconduct, and offered the notes to the judge [*H-227, H-234, and H-237*].  The judge placed those notes in the record, though the notes are now missing.  Also, the trial judge allowed one

juror to make an off-the-record statement to the judge during the hearing [*H-239*].

**GROUND SIX:** Ineffective Assistance of Appellate Counsel

**Supporting Facts:** Lynch's Ground Six for relief is that assigned appellate counsel Jeffrey Gamso and his employer, the Cuyahoga County Office of the Public Defender, were constitutionally ineffective in their representation of Lynch during the entire direct appeals process . . . [SEE CONTINUATION SECTION BELOW, AFTER ANSWERS TO FORM QUESTIONS OF ITEM 12.]

(Doc. No. 1; Doc. No. 1-3.)

On December 20, 2019, Warden Neil Turner ("Respondent") filed the Return of Writ. (Doc. No. 7.) Lynch filed a Traverse on January 14, 2020. (Doc. No. 9.) Respondent filed a sur-reply to the Traverse on January 30, 2020. (Doc. No. 10.)

### III. Motion to Expand

In his Traverse, Lynch states, "The Petitioner requests of the Habeas Court that the record be expanded, as allowed by Habeas Rule 7, to include Meo Juror #7's affidavit [designated by AFF-xx in the Petition], and all of the approximately 341 pages of supporting documents in the Petition with the [H-xxx] page designations. These are needed to provide full context and analysis to all matters under review." (Doc. No. 9 at 19.)

In a sur-reply to the Traverse, Respondent opposes any motion to expand the record to include any documents that were not a part of the record in the state courts on the ground that the Court may not consider new evidence for claims the state courts decided on the merits. (Doc. No. 10 at 3-4.)

Rule 7 of the Rules Governing Section 2254 Cases provides that "the Court may direct the parties to expand the record by submitting additional materials relating to the petition." Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (2010). "The decision of whether to expand the record, however, is within the sound discretion of the district court." *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008). Because "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision

that unreasonably applied federal law to facts not before the state court," a federal habeas court may only review evidence in the record at the time of the state court proceedings. *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399, 179 L.Ed.2d 557 (2011); *Black v. Bell*, 664 F.3d 81, 91 (6th Cir. 2011). Expanding the record for limited purposes, however, falls within the discretion of the district court. *See, e.g., Gordon v. Turner*, No. 5:13cv251, 2015 WL 3969689, at *5 (N.D. Ohio June 30, 2015); *Conway v. Houk*, No. 2:07–cv–947, 2011 WL 249491, at *2 (S.D. Ohio Jan. 26, 2011) (limiting inquiry, in resolving a motion to expand the record, to "whether the materials that Petitioner seeks to add to the record would assist the Court in determining whether an evidentiary hearing might be warranted"); *Keenan v. Bagley*, No. 1:01CV2139, 2008 WL 4372688, at *2 (N.D. Ohio Sep. 22, 2008) (granting motion to expand the record for limited purpose of determining whether the petitioner had exercised diligence in developing the factual record in state court, but "reserv[ing] the right to exclude this evidence from consideration when it reaches the merits of [the petitioner's] claims").

The Court GRANTS the motion to expand the record for the limited purpose of determining whether an evidentiary hearing is warranted with respect to the claims presented to the state courts. The Court shall not consider the materials appended in support of the Petition in considering the merits of Lynch's claims presented to the state courts. The Court further GRANTS the motion as to the claims not presented to the state courts, as discussed *infra*.

### IV. Non-Cognizable Claims

Respondent argues that Grounds One and Two "fail[] to cite a constitutional violation" and "appear to relate to evidentiary rulings and postconviction errors." (Doc. No. 7 at 11.) Respondent asserts that claims that allege errors during collateral review proceedings are not cognizable in habeas review, and state law evidentiary errors are generally not cognizable in habeas review. (*Id.*)

10

Lynch argues in his Traverse that Grounds One and Two relate to his pre-indictment delay (Ground Four) and Double Jeopardy (Ground Five) claims.  (Doc. No. 9 at 23.)

It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Stated another way, a state court's interpretation of state law is binding upon a federal habeas court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 1:16-cv-02069, 2017 WL 4083558, at *15 (N.D. Ohio May 17, 2017).  *See also Thompson v. Williams*, 685 F. Supp. 2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)).  "Federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).  *See also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")

Respondent is correct insofar as the assertion that Grounds One and Two, beyond their relation to Lynch's arguments in Grounds Four and Five and purporting to show the basis for an evidentiary hearing, fail to assert constitutional violations for consideration on habeas review.  Therefore, Grounds One and Two, to the extent they do not relate to Lynch's arguments in Grounds Four and Five, should be dismissed as non-cognizable claims.

11

### V. Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848,

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

13

well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.**     **Application to Petitioner**

**1.**     **Grounds One through Five**

Respondent notes that Lynch admits he failed to raise Grounds One through Three on direct appeal or in a post-conviction action.  (Doc. No. 7 at 16.)  Therefore, to the extent Lynch's claims rely on evidence outside the record, Respondent argues the claims are unexhausted.  (*Id.*)  In addition, Respondent argues that to the extent Lynch's Fourth and Fifth Grounds rely on evidence outside the record, those claims are also unexhausted.  (*Id.* at 17 n.3.)  Respondent asserts that the fact that a post-conviction action may be unsuccessful does not render it futile so as to excuse the requirement for exhaustion.  (*Id.* at 17.)  Respondent argues the Court is presented with a mixed petition under *Rhines v. Weber*, 544 U.S. 269 (2005), and maintains that this Court should not stay these proceedings to allow Lynch to exhaust these claims.  (*Id.* at 18.)   Rather, Respondent maintains a dismissal is the most appropriate disposition of Lynch's claims, or, in the alternative, Lynch should be allowed to delete his unexhausted claims.  (*Id.* at 19.)  Respondent then argues, "Assuming arguendo this Court would hold that it would be futile to require Lynch to exhaust the claim in his first through third grounds for relief, the claims are procedurally defaulted as a result of his failure to fairly present them to the state courts."  (*Id.*) (footnote omitted). Respondent maintains the same is true of Grounds Four and Five to the extent they rely on evidence outside the record.  (*Id.* at 19 n.4.)  Respondent argues Lynch has not argued cause to excuse the failure to file a postconviction action, nor has he demonstrated prejudice.  (*Id.* at 19.)  Furthermore, Lynch has not presented any new reliable evidence of actual innocence to excuse the procedural default.  (*Id.* at 20.)

In response, Lynch argues:

> As a result of contemporaneous analysis and documentation made during March 2016 to late 2018 covering three levels of State courts, the Petitioner had to conclude that any further filings or dealings with those state courts was futile and impracticable, that there were impaired or an absence of effectively functioning State corrective processes for him, and that circumstances existed that rendered such processes ineffective to protect the rights of the Petitioner.

(Doc. No. 9 at 28) (emphasis in original).  Lynch further asserts that his decision "*that further approaches to state courts were futile and impracticable . . . was reasonable and based on sound investigative conclusions.*"  (*Id.* at 39) (emphasis in original).  Lynch maintains that his and Meo's letters to the state court of appeals and Ohio Supreme Court were "considerable good faith efforts to constructively approach and engage" with the state courts "but were rebuffed in a fashion that displayed evidence of process irregularities and violations of the judicial rules of conduct."  (*Id.* at 44.)  Lynch also argues there is cause and prejudice to excuse the procedural default.  (*Id.* at 65-83.)

The Court finds that Lynch has not met the futility exception for exhaustion of his state remedies.  "'An exception [to the rule requiring exhaustion of state remedies before seeking federal habeas corpus relief] is made only if there is no opportunity to obtain redress in a state court of if the corrective process is so clearly deficient as to render futile any effort to obtain relief.'"  *Rucker v. Rose*, 626 F. Supp. 416, 418 (M.D. Tenn. 1985) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).  "The hostility of the state-courts to the position of the petitioner will excuse exhaustion on the ground of futility only when the question raised in the federal-proceeding has recently been decided adversely to the petitioner by highest court of the state . . . ."  *Id.*  Lynch fails to make such a showing here.  As to Lynch's conspiracy claims, another district court rejected such grounds as insufficient to show futility of exhaustion.  *See Banks v. Smith*, 377 F. Supp. 2d 92, 95-96 (D.D.C. 2005).

Therefore, Lynch's Petition is a "mixed" petition, *i.e.*, a petition that presents both exhausted and unexhausted habeas claims.  Before a federal habeas court may grant relief, a state prisoner must exhaust all available remedies in state court.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in

16

which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Generally speaking, a federal district court may not grant a writ of habeas corpus on a "mixed" petition. *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009). *See also Rockwell v. Yukins*, 217 F.3d 421, 422 (6th Cir. 2000) ("Although [the exhaustion] requirement is not jurisdictional, a petition that includes unexhausted claims will ordinarily not be considered by a federal court absent 'unusual' or 'exceptional' circumstances.") When confronted with a mixed petition containing unexhausted claims, the Sixth Circuit has presented a choice of four options:

> (1) dismiss the mixed petition in its entirety, [*Rhines v. Weber*, 544 U.S. 269, 274 (2005)], 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2). *See Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000).

*Harris*, 553 F.3d at 1031–1032. *See also Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009)*; Patterson v. Bracy,* No. 5:17CV173, 2018 WL 3966350, at *3 (N.D. Ohio July 10, 2018); *Kozic v. Sloan*, No. 4:17CV322, 2017 WL 6806261, at **4-5 (N.D. Ohio Sept. 20, 2017).

In *Rhines*, the Supreme Court recognized that, "as a result of the interplay between" AEDPA's one-year statute of limitations[3] and the requirement that petitioners exhaust all available state court remedies, "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." Accordingly, the Court

---

[3] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus to one year from "the date on which the judgment became final or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1).

determined that, in the case of a mixed petition, a district court has the discretion to employ a "stay and abeyance" procedure:

> Under this procedure, rather than dismiss the mixed petition. . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Id.* at 275-76.

The Court cautioned that "stay and abeyance should be available only in limited circumstances," because it "has the potential to undermine . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id.* at 277. Accordingly, the Court determined that stay and abeyance is appropriate only where the petitioner can show: (1) good cause for his failure to exhaust; (2) that his unexhausted claims are not "plainly meritless"; and (3) that there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id.* at 277-78. *See also Wagner*, 581 F.3d at 419. Generally, to show good cause for a failure to exhaust state remedies, a petitioner must show why he failed to use available state remedies timely and appropriately. *See, e.g., Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011) (finding, in the context of procedural default, that the state's concealment of relevant facts, resulting in a failure to raise a claim within the relevant time period, was relevant to showing good cause for a failure to exhaust); *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009) (finding a lack of due diligence in discovering relevant facts was relevant to good cause for a failure to timely exhaust claims). Further, in *Rhines*, the Supreme Court opined that a stay should be entered if the unexhausted claim was "potentially meritorious." *Rhines,* 544 U.S. at 278.

Here, the Court finds Lynch has not demonstrated that he is entitled to a stay to pursue his unexhausted claims. Lynch fails to meet the first *Rhines* prong, that he has shown good cause for his failure to exhaust. Even if some of the additional, outside the record evidence did not come to Lynch's

18

attention until 2018, he has made no attempt to seek post-conviction relief and offers no explanation beyond conspiracy claims as to his failure to do so.

While Respondent asserts he would not oppose a motion to dismiss the unexhausted claims if Lynch could meet his burden to show that dismissal of the entire petition would impede Lynch's right to obtain federal relief, Lynch has not removed his unexhausted claims from his Petition.  Neither side briefed the issue of whether dismissal of the entire petition would bar Lynch's right to obtain federal relief after exhaustion.   Therefore, Respondent at least has waived the argument that dismissal of the entire petition would not bar Lynch's right to obtain federal relief after exhausting his claims.  *See Barnes v. Hofbauer*, No. 02-CV-74047-DT, 2005 WL 1529591, at *3 (E.D. Mich. June 22, 2005).

Therefore, while the Court is sensitive to Respondent's argument that "engaging in a de novo review of his claims in this Court would unfairly reward a petitioner who simply waits long enough or chooses to forego the fair presentation of his claims in the state courts" (Doc. No. 10 at 6 n.8), the Court finds that the specific circumstances of this case warrant consideration of the merits of the unexhausted claims as they are meritless.

### 2. Ground Six

In Ground Six, Lynch argues he received ineffective assistance of appellate counsel for a variety of reasons.  (Doc. No. 1-3 at PageID #58-63.)  Respondent argues that because Lynch has not filed a 26(B) Application and has failed to offer any explanation as to why he has not filed such an application, Ground Six is unexhausted.  (Doc. No. 7 at 20-21.)  Like Respondent argues regarding the unexhausted claims presented in Grounds One through Five, Respondent again argues a stay would be inappropriate to allow Lynch to exhaust his state court remedies for Ground Six.  (*Id.* at 21.)

Ohio Rule of Appellate Procedure Rule 26(B)(1) states:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of

19

> appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Ohio App. R. 26. As the Sixth Circuit explained, "The rule offers defendants 'a separate collateral opportunity' to raise ineffective assistance claims subsequent to a direct appeal. *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012), *citing Morgan v. Eads*, 818 N.E.2d 1157, 1158 (Ohio 2004). In *Goldberg*, the court relied on the Ohio Supreme Court decision in *Ohio v. Davis*, 894 N.E.2d 1221 (Ohio 2008). In *Davis*, the Ohio Supreme Court explained that when it "determines whether or not to accept jurisdiction in a particular case, it is not rendering a decision on the merits." *Ohio v. Davis*, 894 N.E.2d at 1225. The Ohio Supreme Court further explained that, in contrast to its discretionary review, the court of appeals is required to address a timely Rule 26(B) application and determine whether there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal. *Id*. The Sixth Circuit held that:

> [A]lthough a defendant may raise the ineffective assistance of counsel issue in both a timely direct appeal and a timely application under Rule 26(B), the Ohio Supreme Courts denial of the discretionary appeal does not exhaust the issue because the court of appeals is nevertheless obliged to address the application on the merits. In other words, raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits."

*Goldberg v. Maloney*, 692 F.3d at 538.

Courts in this district deny merits reviews of ineffective counsel claims that were not fairly presented in both a timely Rule 26(B) application and in a direct appeal of that decision to the Ohio Supreme Court. *See, e.g., Ramirez v. Warden,* No. 3:14CV323, 2016 WL 5903231, at *3 (N.D. Ohio Oct. 11, 2016); *Walker v. Marquis,* No. No. 1:18CV0806, 2020 WL 1866256, at **11-12 (N.D. Ohio Jan. 21, 2020); *Fletcher v. Bradshaw*, No. 3:16CV00945, 2017 U.S. Dist. LEXIS 114880, at **4-5 (N.D. Ohio July 24, 2017); *Kelley v. Smith*, No. 5:10 CV 731, 2012 WL 1551276, at *4 (N.D. Ohio Apr. 30, 2012);

*Linde v. Turner*, No. 5:14-CV-2799, 2016 WL 1275729, at *7, *report and recommendation adopted by* 2016 WL 1259863 (N.D. Ohio Mar. 4, 2016); *Sluss v. Warden*, 1:15-cv-395, 2016 WL 4533269, at **10-12 (S.D. Ohio Aug. 29, 2016).  However, in this particular case, Respondent asserts Lynch still has the ability to file a 26(B) application.  (Doc. No. 7 at 20-21.)  Therefore, accepting Respondent's statement at face value, Lynch's ineffective assistance of appellate counsel claim is not procedurally defaulted; rather, it is unexhausted.

Here, the Court finds Lynch has not demonstrated that he is entitled to a stay to pursue his unexhausted ineffective assistance of counsel claim.  Lynch fails to meet the first *Rhines* prong, that he has shown good cause for his failure to exhaust.  Even if some of the additional, outside the record evidence did not come to Lynch's attention until 2018, he has made no attempt to seek post-conviction relief and offers no explanation beyond conspiracy claims as to his failure to do so.

While Respondent asserts he would not oppose a motion to dismiss the unexhausted claims if Lynch could meet his burden to show that dismissal of the entire petition would impede Lynch's right to obtain federal relief, Lynch appears unwilling to remove his unexhausted claims from his Petition.  Neither side briefed the issue of whether dismissal of the entire petition would bar Lynch's right to obtain federal relief after exhaustion.  And given the length of time since Lynch filed his Petition, it appears likely the statute of limitations would bar any return to federal court for any of Lynch's claims should the Court dismiss the Petition in its entirety.

Therefore, while the Court is sensitive to Respondent's argument that "engaging in a de novo review of his claims in this Court would unfairly reward a petitioner who simply waits long enough or chooses to forego the fair presentation of his claims in the state courts" (Doc. No. 10 at 6 n.8), the Court finds that the specific circumstances of this case warrant consideration of the merits of the unexhausted claims as they are meritless.

## VI. Review on the Merits

**A.     Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

23

possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Grounds One, Two, Three, and Five

Lynch argues in his Traverse that Grounds One and Two relate to his pre-indictment delay (Ground Four) and Double Jeopardy (Ground Five) claims.  In Ground Three, Lynch asserts the "trial court failed to engage in the required scrupulous search for alternatives to a mistrial."  (Doc. No. 1 at 8.)  In Ground Five, Lynch argues a Double Jeopardy claim that is an "'umbrella'" constitutional claim relating to his first trial, covering "multiple underlying constitutional violation sub-claims," including:

> A.  Interference by the trial judge with the jury as the sole and exclusive decider of the facts, culminating in the improper removal of Meo Juror #7 … [SEE CONTINUATION SECTION BELOW, AFTER ANSWERS TO FORM QUESTIONS OF ITEM 12.]
>
> * * *
>
> B.  The trial judge targeted a specific juror, known in voir dire to be a CPA, former auditor, and detail oriented person [H-96]. That juror, Meo Juror #7, was closely observed and allowed to take extensive notes during the entirety of the trial testimony of two key witnesses-the DNA expert and the accuser M.H. Then suddenly, after the lunch break at the apparent motion of the prosecution, 79 pages into the transcript testimony, the trial judge announced to the jury that note-taking was to be stopped.
>
> C.  The trial judge created false narratives on the record in an attempt to cover-up the fact that the trial judge closely observed the juror taking notes from around 9:15AM to 11:55PM but said nothing.  In his verbal instruction to stop note-taking, the trial judge pretended that the trial had just started and that he didn't notice Meo Juror #7 taking copious notes for over 2-1/2 hours.
>
> D.  In the hearing a few days later, the trial judge falsely accused Meo of violating a verbal instruction "that notes were not to be used as part of the deliberations, either." [*H-215 to H-216; H-144 to H-145*].  Meo flatly told the judge that specific instruction had not been made.  Furthermore, previous verbal instructions, which a reasonable juror would presume to be

24

comprehensive since the written jury instructions were taken into jury deliberations for reference as needed.

E.  In the hearing, the trial judge created more false narratives to give the impression that Meo Juror #7 had a cognitive mental impairment which prevented him from serving on the jury [*H-272*].

F.  The trial judge failed to allow discussion with counsels for a scrupulous search for alternates to a mistrial declaration. [This is addressed as a separate Ground.]

G.  Some jurors conspired to oust Meo from the jury. The hearing transcript [*H-206 to H-263*] clearly showed that they coordinated the statements that they made in the hearing to maximize the inflammatory impact on the trial judge. Based on the judge's previous statements to stop Meo taking notes, the later dramatic confiscation of Meo's notes by the bailiff in full view of all jurors during deliberations, the prohibition on all readbacks of testimony in the written jury instructions, and the questionable appearance of the medical exhibits absent any written guidance on those in the written jury instructions, some jurors perceived that the trial judge would be receptive to any complaints they made against Meo to [sic] order to remove him from the jury as the apparent holdout juror.  Three or four jurors created "notes" on what Meo said during deliberations, likely including comments Meo made in deliberations about possible judicial misconduct, and offered the notes to the judge [*H-227, H-234, and H-237*].  The judge placed those notes in the record, though the notes are now missing.  Also, the trial judge allowed one juror to make an off-the-record statement to the judge during the hearing [*H-239*].

(Doc. No. 1-3 at 34-35.)  Respondent argues that as for Lynch's Double Jeopardy claims based on record evidence to the state courts, Lynch has not shown the state court's decision "was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'"  (Doc. No. 7 at 34-39) (citation omitted).

Regarding the exhausted claims presented to the state courts based on the record evidence, Lynch raised a Double Jeopardy claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 18, 20, 24.)  The state appellate court considered this claim on the merits and rejected it as follows:

{¶ 46} In his fourth assignment of error, Lynch argues that the charges against him should have been dismissed because there was not a manifest necessity for declaring a mistrial in the first prosecution.

{¶ 47} While the jury was deliberating in the first trial, the trial court received a note from the foreperson that indicated an issue arose with one of the jurors. Specifically, the note indicated that Juror 7 was "exhibiting very serious signs of mental or emotional problems. He will not let anyone else speak, constantly interrupts, makes threats, slurring his words and admitted, 'I'm having problem with my head.' Also he demands the transcripts." (Tr. 513.) The trial court shared the note with the parties and made it a part of the record. The trial court had already excused the alternate juror at the time it received the note. The trial court questioned the foreperson to learn more about the issue and to determine whether the issue had been resolved.

{¶ 48} The foreperson stated that Juror 7 was interrupting other jurors and not letting anybody speak. (Tr. 516.) The foreperson further explained that Juror 7 also made threats to both the jury as a whole and to specific individual jurors, was slurring his words and incoherent, and engaging in other disruptive conduct. (Tr. 516.) The foreperson stated that two of the jurors indicated that they do not feel safe in the deliberation room with Juror 7. (Tr. 517.) Juror 7 was adamant about using the notes he took throughout the trial although the trial court instructed the jurors not to do so.

{¶ 49} The trial court questioned Juror 7 about these issues. Furthermore, the trial court questioned the individual jurors separately about the issue.

{¶ 50} After polling the individual jurors, the trial court concluded that Juror 7 "is unable to follow the instructions given by the Court, is unable to live up to his oath as a juror. And I don't think that leaving this juror on that jury, that they can come to a fair and just resolution in this case." (Tr. 571.) Before deciding whether to declare a mistrial, the trial court attempted to contact the alternate juror that had been previously discharged. The trial court was unable to reach the alternate juror, and as a result, declared a mistrial.

{¶ 51} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Double Jeopardy Clause does not, however, bar reprosecution in every case. Where a defendant requests a mistrial, double jeopardy does not bar a retrial unless the defendant's request for a mistrial is precipitated by prosecutorial misconduct intended to provoke a defendant into seeking a mistrial. *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, 2004 WL 1796343, ¶ 36–37.

26

{¶ 52} In the instant matter, we initially find no merit to Lynch's assertion that he explicitly objected to the trial court declaring a mistrial. In fact, the record reflects that defense counsel requested a mistrial after the foreperson informed the trial court about the issues that arose with Juror 7: "Your Honor, I would—I think we're in a position now—with the alternate being excused yesterday, I think we're in the same position we would be in with a hung jury, and I would request a mistrial[.]" (Tr. 518.) Defense counsel reiterated this request while the trial court was polling the individual jurors about these issues: "Your Honor, we're asking for a mistrial." (Tr. 552.)

{¶ 53} Lynch appeared to disagree with defense counsel's request for a mistrial. When counsel stated that the defense was asking for a mistrial, Lynch asserted, "[n]o, no, we're not." (Tr. 553.) In his appellate brief, Lynch appears to suggest that this statement demonstrates that he wanted to proceed with 11 jurors.

{¶ 54} It is well established that "although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to 'hybrid representation.'" *State v. Mongo*, 8th Dist. Cuyahoga No. 100926, 2015-Ohio-1139, 2015 WL 1374943, ¶ 13, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 29. This court has explained, "when counsel represents a criminal defendant, a trial court may not entertain a defendan's pro se motion." *Mongo* at ¶ 14.

{¶ 55} Lynch was represented by counsel in the first prosecution, and thus, the trial court could not entertain Lynch's pro se objection to granting a mistrial. Furthermore, when the trial court declared a mistrial, neither defense counsel nor Lynch objected. Lynch does not argue nor does the record indicate that the state invited a mistrial. Accordingly, the Double Jeopardy Clause does not bar a second prosecution.

{¶ 56} Assuming, arguendo, that Lynch objected to a mistrial, the record reflects that a manifest necessity existed for the mistrial.

> Where a defendant objects to a mistrial, the defendant may be retried if "manifest necessity" exists for the mistrial, *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 25, or if "'the ends of public justice would otherwise be defeated.'" *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900, quoting *State v. Widner*, 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (1981), citing [*Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)]. "Manifest necessity" means a "high degree" of necessity must exist before a mistrial may properly be declared. However, it does not require a showing that a mistrial was "absolutely necessary" or that there was no other alternative but to declare a mistrial. *Washington* at 511 [98 S.Ct. 824].
>
> There is no "mechanical formula" for determining what constitutes a "manifest necessity" for a mistrial: "[T]he manifest-necessity standard

'abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial.'" [*Gunnell* at ¶ 27], quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). What constitutes a manifest necessity for a mistrial is, therefore, left to the discretion of the trial court to be decided on a case-by-case basis, taking into account all the relevant circumstances.

*State v. Marshall*, 2014-Ohio-4677, 22 N.E.3d 207, ¶ 21–22 (8th Dist.).

{¶ 57} Lynch argues that there was no manifest necessity for the trial court to declare a mistrial. In support of his argument, Lynch suggests that although the alternate juror had been discharged, the alternate could have been brought back. Lynch asserts that the trial court failed to investigate the possibility of bringing back the alternate. These arguments are unsupported by the record.

{¶ 58} The record reflects that the trial court made multiple attempts to reach the alternate juror. The jury commissioner attempted to contact the alternate juror, left the alternate a voicemail, and told the alternate to return the phone call. (Tr. 520.) Before declaring a mistrial, the trial court stated, "I would like to see if the alternate is available," and "I'm going to * * * see if we can get ahold of the alternate, if the alternate is available." (Tr. 530, 566.) When the trial court declared a mistrial, it explained, "we don't have the alternate here to replace [Juror 7] with an alternate. It's my understanding the alternate was discharged from jury service yesterday after the Court had let the alternate go from this trial, prior to this jury's deliberations." (Tr. 571.)

{¶ 59} After review, we find that the trial court acted reasonably in determining that a manifest necessity existed for the declaration of a mistrial. The record reflects that the trial court exercised sound discretion in determining that Juror 7 was unable to follow the court's instructions and perform his duty. After learning about the issues that arose with Juror 7, the trial court conducted a thorough inquiry, questioning the foreperson, Juror 7, and each juror separately. The trial court permitted defense counsel and the prosecution to question the jurors as well. Furthermore, before deciding to discharge Juror 7 or declare a mistrial, the trial court made multiple attempts to reach the alternate juror. The trial court only declared a mistrial after determining that (1) the jury would not be able to reach a fair and just resolution in the case with Juror 7 on the panel and (2) the alternate juror could not be reached. Accordingly, the trial court did not abuse its discretion by determining that there was a manifest necessity to declare a mistrial.

{¶ 60} Finally, Lynch cites *State v. Davis*, 8th Dist. Cuyahoga No. 91324, 2009-Ohio-5217, 2009 WL 3154509, for the proposition that the case could have and should have gone forward with 11 jurors rather than the trial court declaring a mistrial. In *Davis*, both the defendant and the state consented to proceeding with an 11–person jury. *Id.* at ¶ 17. In this case, neither Lynch nor the state requested

or consented to proceeding with 11 jurors. Accordingly, Lynch's reliance on *Davis* is misplaced.

{¶ 61} Based on the foregoing analysis, Lynch's fourth assignment of error is overruled.

*State v. Lynch*, 2018-Ohio-1078, 109 N.E.3d at 638-41.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. "The Double Jeopardy Clause of the Fifth and Fourteenth Amendments bars retrial following a declaration of mistrial unless the defendant consented to the mistrial or there was a 'manifest necessity' for the mistrial." *Colvin v. Sheets*, 598 F.3d 242, 244 (6th Cir. 2010).  As the Sixth Circuit explained in *Colvin*:

> The Double Jeopardy Clause "protect[s] a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It also protects a defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). At the same time, given "the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington,* 434 U.S. at 505, 98 S.Ct. 824. Thus, it is well-settled that once jeopardy attaches, prosecution of a defendant other than before the original jury is barred unless "(1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial." *Johnson v. Karnes,* 198 F.3d 589, 594 (6th Cir.1999) (internal quotation marks and citation omitted).

*Id.* at 252.

In *Arizona v. Washington*, 434 U.S. 497 (1978), the Supreme Court explained that the manifest necessity standard cannot be mechanically or without considering the particular issue before the trial judge. *Id.* at 506. "*Washington* established a 'sliding scale of scrutiny' for determining whether manifest necessity existed." *Colvin*, 598 F.3d at 253 (citation omitted).  At the one end, the strictest level of

29

scrutiny is applied where the mistrial is based on prosecutorial or judicial misconduct.  *Id.* (citing *Washington*, 434 U.S. at 508).  At the other end, "'great deference' or 'special respect' is due when the mistrial is based on a deadlocked jury." *Id.* (citing *Washington*, 434 U.S. at 509-10.)  This is so even if alternatives are available. *Walls v. Konteh*, 490 F.3d 432, 438 (6th Cir. 2007) (citing *Washington*, 434 U.S. at 511.)  "[T]he Supreme Court has never required that a judge consider other options when 'the record provides sufficient justification for the state-court ruling.'" *Id.* (quoting *Washington*, 434 U.S. at 516-17).

With respect to the Double Jeopardy claims presented to the state courts, Lynch fails to show the state court determination was contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  As the state appellate court pointed out, defense counsel twice moved for a mistrial. (Doc. No. 8 at PageID #1249, 1283.)  Lynch was represented by counsel, and therefore could not represent himself, so his statement that he was not seeking a mistrial was of no consequence.  Moreover, neither defense counsel nor Lynch objected when the trial court declared a mistrial.  (*Id.* at PageID #1303.)  Therefore, there is no Double Jeopardy issue as Lynch, through counsel, requested the mistrial. *See Colvin*, 598 F.3d at 244.

Even assuming the mistrial was over Lynch's objection, as the appellate court determined, there was a manifest necessity for the mistrial because of conduct by Juror No. 7 and the failure by Juror No. 7 to adhere to the trial court's instructions.  The trial judge considered the note from the jury foreman, questioned every single juror, including Juror No. 7, heard argument outside the presence of the jury regarding the issue presented, attempted to contact the alternate, and took a lunch recess to allow for time for the alternate to return the call from court staff, all before declaring a mistrial.  (Doc. No. 8 at PageID #1244-1303.)  No party "has a right to have his case decided by a jury which may be tainted by bias."

30

*Arizona*, 434 U.S. at 516.  "The Ohio Court of Appeals' affirmance of [the judge's] declaration of a mistrial under these circumstances, grounded as it was on a concern about jury bias, is neither contrary to, nor an unreasonable application of, clearly established federal law as defined by any holding of the United States Supreme Court."  *Walls*, 490 F.3d at 439.  As a result, then, the appellate court "did precisely what *Washington* instructed: it exercised great deference in assuring itself that the trial judge exercised sound discretion in granting a mistrial."  *Colvin*, 598 F.3d at 256.

The additional evidence presented to supplement Lynch's Petition does not show an evidentiary hearing is warranted as to the Double Jeopardy claim presented to the state courts, nor does it warrant a finding of constitutional error as to the unexhausted Double Jeopardy claim(s) considered on the merits.

Accordingly, and for all the reasons set forth above, the Court finds Lynch has not shown that the state appellate court decision was contrary to or an unreasonable application of clearly established federal law or otherwise establish a constitutional violation.  Grounds One, Two, Three, and Five, therefore, fail on the merits.

## 2.    Grounds One, Two, and Four

Lynch argues in his Traverse that Grounds One and Two relate to his pre-indictment delay (Ground Four) and Double Jeopardy (Ground Five) claims.  In Ground Four, Lynch argues "he suffered actual prejudice from pre-indictment delay."  (Doc. No. 1 at 10.)  Lynch asserts the pre-indictment delay stemmed from Cuyahoga County not wanting to spend the money to process DNA kits, which he maintains is not a valid reason for delay, and that he suffered actual prejudice from the delay in the form of lost testimony by the victim's mother, which would have supported his argument that he was framed, and lost records of family counseling from Cuyahoga County Job and Family Services after the victim recanted her accusation.  (Doc. No. 1-3 at 31-32.)

31

Respondent argues that as for Lynch's pre-indictment delay claims based on record evidence to the state courts, Lynch has not shown the state court's decision was contrary to or an unreasonable explanation of clearly established federal law.  (Doc. No. 7 at 29-34.)

Regarding the exhausted claims presented to the state courts based on the record evidence, Lynch raised a pre-indictment delay claim to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 7-1, Ex. 18, 20, 24.)  The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 15} In his first assignment of error, Lynch argues that the trial court erred by denying his motions to dismiss the indictment based on preindictment delay.

> {¶ 16} The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, in some circumstances, the Due Process Clause of the Fifth Amendment provides limited protection against preindictment delay. *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The Ohio Supreme Court has held that "[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor[e], which results in actual prejudice to the defendant, is a violation of the right to due process of law." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

> {¶ 17} The Ohio Supreme Court recently reaffirmed a two-part, burden-shifting test to determine whether preindictment delay constitutes a due process violation. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 13 ("*Jones I*"). First, the burden is on the defendant to present evidence of actual prejudice; once a defendant does so, the burden then shifts to the state to produce evidence of a justifiable reason for the delay. *Id.* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). "A court must determine whether the defendant has established actual prejudice to his ability to defend himself before independently determining whether the state met its burden of establishing a justifiable reason for the delay in bringing charges." *State v. Hunter*, 2017-Ohio-4180, 92 N.E.3d 137, ¶ 11 (8th Dist.), citing *Jones I* at ¶ 16–18, 29.

>> A determination of actual prejudice involves " 'a delicate judgment' " and a case-by-case consideration of the particular circumstances. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting [*Marion* at 325, 92 S.Ct. 455]. A court must "consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Id.* [The Ohio Supreme

Court] has suggested that speculative prejudice does not satisfy the defendant's burden. *Id.* at ¶ 56 (noting that Walls's claims of prejudice were speculative at best); [*State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 100) (noting the difficulty for defendants claiming unconstitutional preindictment delay because "proof of prejudice is always speculative").

The "*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." (Emphasis [sic].) *Id.* at ¶ 105, citing *Marion* at 325–326 [92 S.Ct. 455]. Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. *Marion* at 326 [92 S.Ct. 455]. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

*Jones I* at ¶ 20–21.

{¶ 18} In the instant matter, during the trial court's September 13, 2016 hearing on appellant's motion to reconsider, defense counsel argued that Lynch suffered actual prejudice as a result of the significant delay in prosecution. Specifically, defense counsel explained that "the main reason for the actual prejudice [is] the death of [S.P.] * * * she made statements at the time of the incident letting at least hospital personnel know as well as police that she did not believe [M.H.] was telling the truth." (Tr. 581.) Defense counsel further asserted that the state was unable to show that the delay in prosecution was reasonable. The state argued that S.P.'s unavailable testimony would not be exculpatory due to the DNA evidence linking Lynch to M.H.'s rape kit. The state explained that the police ceased the active investigation in 1994 because M.H. recanted her allegations against Lynch, and that the case was reopened when the prosecution received the new DNA evidence linking Lynch to the rape kit.

{¶ 19} The trial court indicated that it reviewed the case law set forth in *Jones I*, *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, 2017 WL 242177 ("*Jones II*"), *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097, and *Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199. In denying defense counsel's motion to reconsider, the trial court found the facts of this case to be distinguishable from *Jones II*. The trial court concluded, "I'm not convinced that actual prejudice has occurred from the delay. Even if we get to, you know, the point of actual prejudice in this case. In looking at it when the burden shifts to the State to show that it was not unjustifiable, you know, based on the facts here, I do find that a delay was justifiable anyway." (Tr. 596–597.)

{¶ 20} In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the trial court's findings of fact. *Hunter*, 2017-Ohio-4180, 92 N.E.3d 137, at ¶ 16, citing *State v. Smith*, 8th Dist. Cuyahoga

33

No. 100501, 2014-Ohio-3034, 2014 WL 3400677, ¶ 23, and *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, 2008 WL 4174867, ¶ 45.

{¶ 21} In the instant matter, Lynch argues that he was prejudiced by the preindictment delay because S.P. passed away and, thus, was not available to testify; CCDCFS records were lost; and information regarding the rape kit's chain of custody was lost.

{¶ 22} First, regarding S.P.'s lost testimony, Lynch asserts that (1) S.P. knew that M.H.'s allegations could not be true; (2) S.P. told the hospital personnel that Lynch was in bed with her at the time that M.H. alleged he raped her; and (3) S.P. opined that M.H. likely made up the allegations because she did not want Lynch to marry her.

{¶ 23} Second, regarding the lost CCDCFS records, Lynch argues that there are no records of the investigation or notes from the interviews conducted by CCDCFS investigators. The only CCDCFS record available is an incident report indicating that M.H.'s allegation was unsubstantiated. Lynch asserts that these notes and records "would contain further information tending to throw doubt on M.H.'s claims." Appellant's brief at 5.

{¶ 24} Third, regarding the lost chain of custody information, Lynch argues that there is no information about how the rape kit was stored by the Cleveland Police Department in the Fourth District's property room or how it was transported to the main property room downtown. He contends that this information is important because there was not a complete DNA profile extracted from the semen from M.H.'s vagina in the rape kit.

{¶ 25} After reviewing the record, we find that Lynch fails to demonstrate actual prejudice. Although Lynch offered an explanation of what purportedly exculpatory testimony S.P. would have offered, the unavailable testimony must be balanced against the evidence at the time of the indictment to determine whether Lynch would suffer actual prejudice. *Jones II*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, at ¶ 6, citing *Jones I*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, at ¶ 24.

{¶ 26} As noted above, the DNA evidence available at the time of the indictment revealed that Lynch could not be excluded as the source of semen on the vaginal swab from M.H.'s rape kit. We cannot say that S.P.'s testimony that the allegations against Lynch could not be true would minimize or eliminate the impact of the DNA evidence and bolster the defense. Furthermore, Lynch fails to demonstrate actual prejudice by speculating that he could have asserted an alibi based on S.P.'s testimony that he was in bed with her at the time M.H. alleged that he raped her.

{¶ 27} Although S.P. was not available to testify at trial, Lynch acknowledges that "[w]e know much of what [S.P.] would have testified to from her statements

as they appear in [M.H.'s] medical record from the hospital at the time they took the rape kit." Appellant's brief at 4. Regarding S.P.'s unavailable testimony about M.H.'s motive for fabricating the allegations, the record reflects that Lynch was available to testify, and did, in fact, testify about any motives M.H. may have had for fabricating the allegations. Lynch testified that S.P.'s children did not care for him, did not want him in the home, and wanted S.P. to be with their father rather than Lynch. Accordingly, S.P.'s testimony on this point would have been cumulative to Lynch's testimony.

{¶ 28} Lynch's claim of prejudice regarding the loss of CCDCFS records or notes is speculative at best. He presumes that the CCDCFS investigators took notes during the interviews of M.H. and Lynch, and retained these notes in the case file. As noted above, M.H. recanted her allegations against Lynch approximately two weeks after the May 26, 1994 incident. Lynch asserts that the missing CCDCFS records "would provide a concrete explanation of why there was no basis for the prosecution." Appellant's reply brief at 5. Lynch presumes that the CCDCFS records or notes contained a "concrete explanation"—other than the fact that M.H. recanted—as to why the allegations were found to be unsubstantiated.

{¶ 29} Lynch's claim of prejudice regarding the loss of chain of custody information is also speculative. There is no evidence that the information regarding the storage conditions at the Fourth District or how the rape kit was transported to the main property room was initially preserved but subsequently lost as a result of the delay. The missing information may be evidence of an incomplete chain of custody; however, this defense would have existed regardless of the passage of time. *See Jones II*, 8th Dist. Cuyahoga No. 101258, 2017-Ohio-176, at ¶ 9. Furthermore, several witnesses—BCI forensic scientist Andrea Dennis, Cleveland Police Officer Alex Parente, BCI forensic scientist Marissa Keeley, Cleveland Police Detective Michael Moctezuma, and Cuyahoga County Prosecutor's Office Investigator Timothy Clark—were available to testify regarding the rape kit's collection, sealing, storage, and transportation.

{¶ 30} Assuming, arguendo, that Lynch sufficiently demonstrated actual prejudice, we find that the trial court properly determined that the delay in prosecution was justified.

{¶ 31} Lynch argues that the state's delay in bringing the charges against him was not justifiable because M.H. identified Lynch as her rapist both to S.P. and the police, and the police and prosecution allowed the rape kit to sit untested for 18 years. We disagree.

{¶ 32} The record reflects that the delay was a result of M.H. recanting her rape allegation approximately two weeks after reporting the allegation to her mother and the police in May 1994. Although a rape kit was conducted at the time of the incident, DNA evidence was not discovered until 2014 when the rape kit was tested by BCI. The DNA evidence establishing that Lynch could not be excluded

as a contributor to the DNA profile from M.H.'s rape kit was "new evidence" that justified the delayed indictment.

{¶ 33} Based on the foregoing analysis, Lynch's first assignment of error is overruled.

*State v. Lynch*, 2018-Ohio-1078, 109 N.E.3d at 633-36.

At the outset, the Court notes that Lynch has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial. As the Supreme Court has explained, it is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *See also Parker v. Burt*, 595 F. App'x 595, 600 (6th Cir. 2015) ("[T]he Sixth Amendment's Speedy Trial Clause protects against excessive postindictment delay."); *White v. Warden, Chillicothe Corr. Institution*, 2018 WL 3389908, at *12 (S.D. Ohio July 12, 2018) ("The Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or the "actual restraints imposed by arrest and holding to answer a criminal charge" have occurred."). Here, Lynch has not alleged his constitutional rights were violated by any delay between his indictment and trial. Rather, Ground Four asserts a constitutional violation based on the delay between the alleged offenses and the indictment and, therefore, states a claim under the Due Process Clause.

The United States Supreme Court has found that the Due Process Clause of the Fifth Amendment requires the dismissal of charges based on pre-indictment delay only where it is shown that the delay caused "substantial prejudice" to the Petitioner's rights to a fair trial and was an "intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 322. *See also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Consistent with this Supreme Court authority, the Sixth Circuit has held that "dismissal for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial and (2) that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992)

36

(internal quotation marks omitted) (alterations in original).  *See also Parker,* 595 F. App'x at 601; *Wolfe v. Bock*, 253 F. App'x 526, 531-532 (6th Cir. 2007); *McKissic v. Birkett*, 200 F. App'x 463, 469–70 (6th Cir. 2006).

Regarding the first element, federal courts have explained that mere speculation is insufficient to show substantial prejudice.  *See, e.g., Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales v. Clipper*, 2018 WL 2473672, at *8 (N.D. Ohio May 15, 2018) (habeas petitioner failed to show prejudice where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle v. Jackson*, 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008) (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

Regarding the second element, it is well-established that a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time."  *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986) (citations omitted), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *see also United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997).  As the Supreme Court has explained:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct., at 465, precisely because investigative delay is not so one-sided. [footnote omitted]. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.

37

*Lovasco*, 431 U.S. at 795.  Moreover, where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists.  *See e.g., Rogers*, 118 F. 3d at 476 (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) ("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists.").

In sum, "[a] defendant bears a 'heavy burden' on a claim that a pre-arrest delay violated due process."  *Mayes v. Hoffner*, 2016 WL 3385084 (E.D. Mich. June 20, 2016).  Indeed, the Sixth Circuit has explained that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative."  *Rogers*, 118 F.3d at 477, n.10.  *See also Miracle v. Haas*, 2016 WL 1583807, at *7 (E.D. Mich. April 20, 2016).

In the instant case, the state appellate court reasonably concluded that Lynch failed to show that the State's delay in charging him violated his due process rights.  The state appellate court applied the correct standard to Lynch's claim, observing that a due process violation based on pre-indictment delay requires a showing both of substantial prejudice and that there was no justifiable reason for the delay.  *See Lynch*, 109 N.E.3d at 633-36.  The state appellate court then determined Lynch had failed to show substantial prejudice.  The court noted it could not say that S.P.'s testimony regarding the lack of truth of the allegations would have minimized or eliminated the DNA evidence, Lynch's assertion that S.P.'s testimony could have supported an alibi was speculative, and that S.P.'s testimony regarding the victim's motivation to fabricate the allegations would have been cumulative to Lynch's.  Regarding the CCDCFS records and chain of custody information, the court found Lynch's arguments speculative.  The state appellate court went on to find that even assuming Lynch could show substantial prejudice, there was a justifiable reason for the delay.  The delay resulted from the victim's recantation two weeks after reporting

the allegation, and while a rape kit was done at the time, DNA evidence was not discovered until 2014. The state appellate court found the DNA evidence was "new evidence" that justified the delayed indictment.

As to the claims presented to the state courts, Lynch has failed to show the state appellate court's decision is contrary to or an unreasonable application of clearly established federal law.  First, Lynch has not demonstrated that the state appellate court unreasonably determined he failed to show actual prejudice. Lynch has not shown that S.P.'s testimony regarding the lack of truth of the allegations would minimize or overcome the DNA evidence in the case, nor has he shown that S.P.'s testimony regarding the victim's motivations would be more than cumulative of his own testimony.  In addition, Lynch has not shown that S.P.'s testimony could have supported an alibi was more than speculative.  Similarly, Lynch has not shown that the loss of CCDCFS records and chain of custody information was more than speculative.  As noted above, federal courts have rejected claims of pre-indictment delay based on speculative and unsupported assertions of prejudice.  *See e.g., Marion*, 404 U.S. at 325-326 (finding the possibility "that memories will dim, witnesses become inaccessible, and evidence be lost" is not sufficient to show prejudice from the delay); *Gales*, 2018 WL 2473672, at *8 (habeas petitioner failed to show prejudice where "he did not detail what the witnesses, whose memories are alleged to have faded, would have testified to"); *Randle*, 544 F. Supp. 2d at 631 (finding "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay").

Second, Lynch has not demonstrated the state appellate court unreasonably concluded there was a justifiable reason for the delay, *i.e.*, the newly obtained DNA evidence.  Because Lynch has failed to show that the State delayed his prosecution for an improper purpose and/or in order to gain a tactical advantage, he cannot prevail on his due process claim based on pre-indictment delay.  *See Brown*, 959 F.2d at 66.

The additional evidence presented to supplement Lynch's Petition does not show an evidentiary hearing is warranted as to the pre-indictment delay claim presented to the state courts, nor does it warrant a finding of constitutional error as to the unexhausted pre-indictment delay claim(s) considered on the merits. Although Lynch relies on a Patch.com article he claims shows that Cuyahoga County refused to pay for DNA testing until then Attorney General Mike DeWine waived the testing fees "sometime after 2011," this does not show an improper intent on the part of law enforcement as to the delay in indicting Lynch.

Accordingly, and for all the reasons set forth above, the Court finds Lynch has not shown that the state appellate court decision was contrary to or an unreasonable application of clearly established federal law or otherwise establish a constitutional violation. Grounds One, Two, and Four, therefore, fail on the merits.

### 3. Ground Six

In Ground Six, Lynch alleges he received ineffective assistance of appellate counsel based on the following grounds:

a) That [appellate counsel] Gamso did not fully investigate or raise several meritorious issues during the appeals process.

b) For certain issues raised, Gamso's briefings submitted to the appellate courts were inadequate, incomplete and thereby ineffective.

c) In addition, Gamso completely ignored clear evidence of fraud on the court and its prejudicial impact on Lynch and the integrity of the judicial process. Gamso asserted that such matters were not part of his representation responsibilities as Lynch's attorney.

(Doc. No. 1-3 at 41.)

Lynch asserts a "highly deferential standard does not apply here . . . as it would to claims against trial counsel" and that the above failures "can never be considered a strategic decision." (*Id.*) Lynch argues he suffered actual prejudice as a result of counsel's ineffectiveness as he "had a reasonably likely

40

chance of prevailing on appeal [or reconsideration of the appeal] if the double jeopardy and preindictment delay issues had been presented effectively in briefs." (*Id.*)  Lynch maintains he is entitled to a new appeal and *de novo* review of all issues previously presented, as well as "any additional issues raised using 'cause' to overcome any procedural default." (*Id.*)

Respondent did not brief the merits of Ground Six.[4]

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id.*  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a

---

[4] The Court's Initial Order states, "**If Respondent moves to dismiss a ground for relief on procedural default, he or she shall still brief the merits of the claim.**" (Doc. No. 4 at 2) (emphasis in original). The Court cautions Respondent against any future noncompliance with the orders of this Court.

petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon,* No. 3:12-cv-01609, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, the two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

As Lynch concedes, appellate counsel made preindictment delay and Double Jeopardy arguments on appeal – the crux of his habeas petition before this Court. (Doc. No. 1-3 at 41-45.) However, Lynch

takes issue with the fact that appellate counsel did not include certain arguments in support of those claims, including arguments of fraud on the court and judicial misconduct, and instead included "minor" issues.  (*Id.*)  However, Lynch has no constitutional right for counsel to raise every non-frivolous issue on appeal, and he cannot show that the "sub-arguments" raised in his Petition and supporting materials are clearly stronger than those presented on appeal.  Tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, and that is what happened here.

Accordingly, and for all the reasons set forth above, the Court finds Lynch has not shown that he received constitutionally ineffective assistance of appellate counsel.

### VII. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.

Date: March 22, 2022                                   *s/ Jonathan Greenberg*
                                                      Jonathan D. Greenberg
                                                      United States Magistrate Judge

### <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**